All right, our next case for argument is 22-1644, Kuster v. Western Digital Corporation. Mr. Reed, please proceed. Thank you, Your Honor. May it please the court. Good morning, David Reed for Martin Kuster. I would like to start this morning with Mr. Kuster's prior invention and the corroboration issue that we've raised in our briefing. The requirement for corroboration is fundamentally a requirement about credibility of the inventor's testimony, and the purpose of that requirement is to guard against litigation-inspired fabrication by an inventor. Importantly, it's not a demand for evidence that independently proves every aspect or detail of the inventor's account of his prior invention. What is your best independent corroboration evidence of reduction of practice before the filing date? Can you just kind of point us to that and talk to that aspect? Of course, Your Honor. The evidence under the rule of reason, which applies here, must be weighed as a whole. So it's a combination of pieces of evidence. First and foremost, it's his design notebooks that he kept in the ordinary course of his development of these products. And those design notebooks not only show sketches of his prototype, which is in the record, and sketches of his design, but the notebooks also discuss meetings with his customer, Victorinox, which Mr. Kuster testifies, and it makes common sense, Your Honor, and this is a common sense test, that you would not set, a company like Victorinox would not set a timeline to bring a product to market if that product does not first exist. And then the evidence, the record also includes evidence that going forward beyond the Shell reference, according to the timeline set forth in Mr. Kuster's notebooks, the product was actually commercialized according to that timeline. So I think it's those pieces of evidence together add up to a story, to a body or corpus of evidence that collectively supports Mr. Kuster's account. The problem is the notebook has no indicia of independence, none. So look, if the whole point of this is to acquire corroborative evidence that makes certain that somebody doesn't go backwards and falsify things, how do we have any assurance that that's not what happened with this notebook? Because it could, I mean, the inventor could very easily go back and create a notebook like this. I mean, that's why companies have other people sign the bottoms of pages and date them and do things to verify, not the substance of what's on the page, but the fact that the page existed as of a date and time. Your Honor, this Court has held that the lack of witnessing in a notebook does not disqualify a notebook from serving as evidence of corroboration. And I would point the Court to the Hypertech versus monoclonal antibodies case that's cited in the briefing here. And in that case, the Court, there was a notebook, it was not contemporaneously witnessed, it was witnessed months or years later, and the Court gave that notebook corroborating value for the prior invention. And part of that, I think, was the circumstances in that case. The Court notes that it was a startup company. Now, did you just say, though, that it was witnessed at some point in time, just later? And in this case, no witnessing whatsoever, just to kind of get our facts aligned? That's correct, Your Honor. But here, this record includes evidence that's at least as good as witnessing. Pages from Mr. Kuster's notebooks were filed in 2011 with provisional applications with the USPTO. So those provisional application filings indisputably date those notebooks back in time to the time period when the development occurred. These, that removes any doubt that these could be a litigation's part. But that doesn't get it back to pre-2010, which is what you need, right? I mean, the fact that you have proof that the notebook pages existed in 2011 doesn't mean that they existed in 2010. Well, I think that's the, again, it's a preponderant standard, and the question is what's more likely than not? What is your problem for us on review? What is our standard that we apply? The preponderant standard, it's a burden that, as we. What do we review the fact-finding below under? So if the fact-finding, you review the finding of the fact for substantial evidence. But the test that's applied was an incorrect one here, and I think that's an error of law, a legal error in failing to weigh the evidence collectively. The board dismissed the notebooks as corroborating in their entirety because of the lack of witnessing, and did not take into account or give weight to the corroboration evidence. And it's implausible that these would have been fabricated. The provisional filings were before the Schau reference that we're antedating here, before it was even published. So Schau was not even in the public record at that point. You mentioned the Victorinox meetings. What do you have other than testimony or notebook pages to indicate these meetings happened at a certain date? The evidence that the meetings occurred at a certain date is based on the notebook. So nothing other than the notebook? No, other than the, there is evidence that Victorinox subsequently commercialized the invention, which ties together with the notebook and the body of evidence, lends credibility to that meeting occurred, because the timeline set forth in that meeting and the meeting notes, dovetails with the timeline that actually came to pass. When you say there's that subsequent evidence of commercialization, what is the date of that evidence that you're referring to? That evidence is commercial products dated in mid-2011 after Schau, and then the Victorinox booth at the CES show that occurs every January. So January 2012 in this case. And the, I'd like to circle back and note again, the Hypertech case mentioned that it was a startup company, and you have to look at the circumstances here. Circumstantial evidence, this court's cases have supported the idea that circumstantial evidence can be strong evidence of corroboration. So here's the problem. I mean, I just see this as a fact question. I mean, you have photographs at the 2012 Consumer Electronics Show, and that seems to, and that's in 2012, and that seems to be the first, what I'll call independent evidence. Everything else seems to be entirely Mr. Kooster's own testimony and or his notebook, which isn't corroborated in any way. What you could have argued to the board, and maybe you might have persuaded them, is that he couldn't, for example, have had this commercial embodiment at the 2012 show unless he had been taking all these steps leading up to it. And perhaps that would have persuaded them. Those are the kinds of things, though, that are all part of a question of fact, that the fact finder decides in the first instance. And you're here on appeal, and I don't see the legal error. It was your obligation to tell the board why the notebook was, in fact, credible despite not being witnessed. And it was your obligation to convince them of that. And that's a question of fact. Your Honor, the board placed great weight on the lack of witnessing, which the notebooks are not witnessed, but did not give any- They did their job. I mean, they're the ones that look at the piece of evidence and they say, well, we don't believe this evidence because it's not witnessed. It's not credible in our view. I mean, we don't get to overturn that just because you tell a good story about how you think all of this taken together shows it. I mean, that was, you know, the board's job, and apparently you didn't convince them. I would submit, Your Honor, that the board parsed the evidence into individual buckets, and the evidence fits together like pieces of a puzzle, and the board didn't consider that. It's not until those pieces are put together that the full picture becomes clear and lends credibility to Mr. Kuster. No, they didn't consider it. I mean, I hear these kind of, the board didn't consider things collectively or didn't consider it all the time, but when they're discussing it, they have to discuss it piece by piece to show why it doesn't. Do you want a sentence from them saying, in altogether, it still doesn't convince us? Isn't that implicit in their finding? It's not exactly that, Your Honor. It's the lack of acknowledgement or discussion or recognition of the linkages, and there's one other piece of independent evidence we haven't discussed, which is attorney time records. Mr. Kuster, in October, before the Schell reference, met with attorneys. Don't the billing records, though, lack detail to support reduction of practice? Your Honor, every, again, every detail of the account does not have to be corroborated, much less in a single piece of evidence. The attorney time records match the notes from the meetings that were noted in the notebooks and lend that credibility to the notebooks. It's that connection point. That's what it means when you look at weighing the evidence as a whole. And there's- Are you saying that basically, if you pile up enough completely uncorroborated stuff together, that suddenly it transforms into corroborating it together? No, Your Honor, the test is a test under the rule of reason where all of the evidence put forth must be considered as a whole, not individually, to determine, is the inventor credible? Is it more likely than not that he's lying? Or that he's fabricating his testimony? Or is it more likely than not that he's telling the truth? And here, there's been no presentation of an alternative theory of how this body of evidence supports anything, any timeline of development other than the timeline that Mr. Kuster gave sworn testimony that he followed. I mean, isn't the alternative theory that he didn't follow this timeline and he made all this stuff up? There's been no presentation of an alternative theory. It's been an attack on- It's not their burden to present the alternative theory. On a substantial evidence review, you only win for lack of substantial evidence if no reasonable fact finder could reach the result the board did. Couldn't a reasonable fact finder say, he didn't corroborate anything, we don't have anything, so we just don't believe him that this all occurred before the relevant date? Under the dynamic Drinkware decision, this is an evidentiary question, what does the evidence show is more likely than not? And under 35 U.S.C. 316e, and under the dynamic Drinkware decision, the burden of persuasion rests on the petitioner here at Western Digital to show all issues of fact, including credibility, by a preponderance. And so without any evidence, and this court in the DuPont decision noted that it is highly relevant that there's been no alternative theory, no evidence that would call into question Mr. Kuster's testimony, and that's the second issue we've raised in our briefing is the misapplication of that burden. In the final written decisions, the panel faulted Mr. Kuster for failing to satisfy his burden,  because he has an issued, invalid, and presumptively valid U.S. patent. So I see that I'm into my rebuttal time, may I reserve the balance? Of course, thank you, Mr. Reed. How do I say your name, counsel? I'm sorry? How do I say your name? Kee Kaper. I would not have gotten that, I'm glad I asked, Ms. Kee Kaper, please proceed. I would have butchered that one, sorry. That's what most people do. May it please the court, Kieran Kee Kaper on behalf of Western Digital. As a general overview, the board did a thorough job with respect to the shall reference, but committed reversible error with respect to the he reference, as reflected in Western Digital's cross appeal. I'll address the three issues raised in Mr. Kuster's appeal as to the 243 patent first, before turning to Western Digital's appeal as to the 206 patent. So the first issue is the rule of reason, and as Western Digital has identified in their brief, it's more than clear that both parties advocated for the rule of reason to be applied, and then if you go through each rule, each final written decision, you can see both final written decisions, you can see that they correctly said that the rule of reason was the correct standard to apply, and then they went through a thorough analysis applying the rule of reason and addressing each piece of evidence, and I would submit, of course, they have to, as Judge Hughes said, they have to analyze it individually, but then of course they did look at all the pieces together in order to conclude, unfortunately, Mr. Kuster did not meet his burden of proof to show that the Xiao reference, that Mr. Kuster's invention predated the Xiao reference, and so the final written decisions are very clean as to this point, and unfortunately he didn't meet his burden, and that goes into the second issue, which is specifically that the burdens of proof were properly allocated in here, Western Digital had the initial burden of proof, Western Digital met that burden of proof by presenting the Xiao reference, the burden of proof then flipped to Mr. Kuster to provide corroborating evidence showing both that he reduced it to practice and that he reduced it to practice as of the specific date, and unfortunately he was unable to meet that burden, and I cite to Judge Moore's case, the Apatow case, which provides kind of a clear explanation of how this works and how he did not meet his burden of production, and there was some quibbling of the language with respect to language in the final written decisions and whether or not this implies burdens were shifted and the language of the final written decisions actually matches very close to the Apatow case, reflecting actually what the burden actually is and then how it was met, and so then moving on to the third issue, which is whether or not Xiao actually disclosed this limitation, the specific limitation of connection fingers embedded to be exposed upon the cover of the contact bar, and embedded was an agreed upon definition which is set firmly into a mass or material, and there is a claim that there's reversible error because the wrong claim construction was applied right out of the gate, I would say that is incorrect because the board in this situation applied both constructions, so it said that the broader construction is the correct construction, but regardless, we are going to apply the narrow construction just to prove that also under the narrow construction, the Xiao reference actually does disclose the limitation in question, and that is supported by the evidence in the record, which shows, and I would just point, you know, the board, this is in our brief, but of course, point the board to, excuse me, point this court to figure nine of the Xiao reference, which shows the long connection fingers, and even if we're limiting it just to the exposed portion, it shows that they dip down to confirm that they go into the connector main body, which is referenced in figure 10, and so there's substantial evidence to support the more narrow claim construction, and therefore, the Xiao reference clearly does disclose the limitation, and there should be no further inquiry as to that, and unless there are any questions as to the 243 patent, I was gonna move on to Western Digital's cross appeal, which is the 206, and so as to the 206 patent, this is dealing with the limitation, connection fingers embedded to be exposed upon the connection surface, and just to sort of crystallize the issue, the issue here is that the board's determination that reference he does not disclose the specific limitation is based exclusively on Welch, and Welch is the expert for Mr. Kuster, and that is that appendix 035 to 036, and you can go through it, it's two pages, but every single citation, there's an id in there, but it goes right back to Welch, and so all of Welch's testimony, unfortunately, is either plainly inconsistent with the record, or it's based on an incorrect understanding of the claims, which means it must be disregarded under the Homeland Housewares case, which we cited to the court, which is 865 F3rd 1372 at 1378, and so I'll just walk briefly through the paragraphs of Welch. Before you get to Welch, I mean, my problem is that it seems like he's disclosure has the contact pads formed on the surface of the substrate, and that's at column two, lines 28 to 30. I don't see that he's disclosure suggests contact pads fixed firmly into the substrate, which is what's required by the claims. Correct, and that's where we would cite you to do a comparison of figure three, along with figure six of he, to show you, and that's an appendix 4242 is figure three, which shows that they're flush with the contacting pads, but if you look to figure six, it has a cross view. Yes, but the problem is, figures are not to scale. Figures are not to be relied on for what they disclose, in the way in which you're suggesting, and on top of all of that, this is a substantial evidence question. So you have, at column two, lines 28 to 30, a statement that the contact pads are formed on the surface of the substrate. That would suggest they don't fix firmly into the substrate. You want to point me to some figures, which I'm not allowed to rely on, and certainly not to contradict the clear language in column two, and all of this is a substantial evidence question. What am I missing? Because it seems like it's an open and shut case against you. Well, if you're relying just on the he figure, we do think there are limitations. Excuse me, we do think there are disclosures in the specification, that it is of the PCB. Substantial evidence, remember? Yes. So what is wrong with the board's conclusion about what I just said? The issue that is wrong with the board's conclusion is that the board's conclusion relies exclusively on Mr. Welch's testimony. No, it relies on column two, line 28 to 30, it expressly cites it. But it private. And it also relies on Mr. Welch's testimony thereof, but the column speaks for itself. It doesn't say we rely only on Mr. Welch. It points to the reference. Well, it's true, but every single time it's citing to it, it's citing to Mr. Welch's testimony, which is citing to, which is citing back to reference P. There is substantial evidence in this record regardless of Mr. Welch. The substantial evidence is column two, lines 28 to 30, which the board expressly cites. Yes, and I don't care that they also mention Mr. Welch. Who cares? Our reference speaks for itself. It is the substantial evidence. Right, and our position is that reference he does disclose the limitation. It discloses that they're into, and the reason is because it says that they are golden fingers of the PCB, and also that they're exposed on the upper surface. This is your argument. It's a substantial evidence fact question for the board, and column two, line 28 to 30, supports what they're saying. I mean, if the board had agreed with you, you would probably be winning on substantial evidence too. Also true. But they didn't. We're not here to second guess the board's reading of this reference when there's a specific statement that supports one side, and a specific statement that supports the other side. I mean, we get way too many of these PTAB appeals where you argue substantial evidence, and there's clearly substantial evidence, and you're really just re-arguing your case. Well, we do think that there, obviously, there were errors in terms of relying on Welch's testimony. Yes, but if we get rid of that, we still have the reference, and the only way you win is if the reference can't possibly be read to support the board's conclusion, and that's just not the case. Well, our position is that the reference should be read to support our conclusion. You've lost your case by saying it should be read. Yes, I understand you disagree, yes. Right? No, I don't care if, I might agree with you. When you say it should be read to do something, that's the wrong standard. The standard is no reasonable person could find it to be read this way. You did not say that. You said you think it should be read to read this way. They think it should be read the other way the board agreed with them. You won part of the case, you lost part of the case. Yes, I understand that. Our position is that he discloses that they are into the connection surface, which is shown both by the figures and by the specification, which is saying of the PCB, and exposed on the upper surface. Do you understand why I'm frustrated? Because you're not making an argument that would prevail under our standard review. You're making an argument that you might win if we were the trier of fact. Which you are not. It doesn't do you any good, or your client any good, to make arguments that aren't directed to our standard review. I mean, maybe you just can't in good faith say there's no way to read he the way the board found it. But if you can, that's the argument you should be making. But I don't hear it from you. We do not believe there's any way to read he. We think it is clear, from both the specification and the figures, that these are set into the connection surface. And that is, again, it's figures. You shouldn't say that it's the only way to read that reference. That's the only way you win. Our position is that it is the only way to read the reference. And so, and unfortunately also, of course the board needed more than the reference, because it also relied on Welch to corroborate this, and there were multiple flaws and issues with Welch, both reliance on the wrong claim construction, and also reliance on the fact that they were copper fingers as opposed to the actually disclosed gold fingers. And so I understand there is a dispute about that. I completely understand and respect that, but that is our position as to that. And with that, thank you. Okay. Mr. Reed, you have some alone time. Thank you. Thank you, your honors. I'd like to turn to the Shou's disclosure, or failure to disclose embedded connection fingers as required by the claims. And no reasonable person could read Shou as disclosing embedded connection fingers. There was a discussion during my friend's presentation about the tip portions of Shou as being embedded, but there's no teaching in Shou that any tip portion, or any other portion of the reference is fixed firmly into a mass or material of the contact bar of Shou. If you turn to page 67 of the blue brief, there are annotated figures of the embodiment of Shou that's being relied upon. And if you look at the exploded view in figure nine, there's no notch or recess where those tip portions would be received into that material, into that mass or material. There's also a discussion at column seven, starting at line 39 of the manufacturing process of Shou's connector. And that process makes clear that you have these terminals. They're separate from the blue colored element here, which is the connector main body. And then those, after you take those pieces individually, you assemble them together. There's no discussion of a molding process. There's no discussion of any manufacturing process that would have resulted in those connection fingers being fixed firmly into a mass or material. Except you have Dr. Baker's opinion that a skilled artisan would have understood it was necessary or it wouldn't function properly because it was necessary to prevent the terminals from bending upward or moving laterally. And he said this at A2837, paragraphs 250 to 253. And I don't see how that's not substantial evidence to support the board's conclusion. So we would submit that no reasonable person could accept that in view of Shou's disclosure. Shou provides specific structures to hold its fingers in place. Slot columns and notches that hold those terminals, 322, where they are. Mr. Kooster's invention was designed to be incorporated into a Swiss Army knife. It needed to be slim, it needed to be durable. He achieved that by recognizing that you could embed those connection fingers into a contact bar. Shou's approach is different. It uses slot columns, it uses notches. It doesn't- It's all fax stuff. I agree, but the question is whether a reasonable person could read Shou as disclosing embedding and we would submit that no reasonable person could read that from Shou. It's a step too far and beyond what's reasonable. Okay, that is the conclusion of your rebuttal time. Thank you, Your Honor. Because he did not address the cross appeal, you have no sir, reply, rebuttal, whatever. So this case is taken under submission. Thank you, counsel.